**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TOM LAZAR, *Plaintiff*, | ) | No. 25 C 4904 |
| v. | ) | Chief Judge Virginia M. Kendall |
| WHEELS, INC., *Defendant*. | ) | |

## OPINION AND ORDER

Defendant Wheels, Inc. petitions the Court for $39,827.50 in attorneys' fees. (Dkt. 42). For the reasons below, the Court grants Wheels' motion in part and hereby orders Lazar to pay Wheels $36,417.50.

## BACKGROUND

On April 21, 2026, the parties held oral argument over Lazar's motion to voluntarily dismiss without prejudice. (Dkt. 37). Wheels informed the Court that it had incurred significant expenses defending against Lazar's complaint—over $30,000. (*Id.*) The Court informed Lazar that he would be required to pay Wheels' fees if he proceeded with his dismissal without prejudice. (*Id.*) Nevertheless, Lazar indicated that his desire was to dismiss without prejudice. (*Id.*) On May 1, 2026, the Court granted Lazar's motion to voluntarily dismiss without prejudice. (Dkt. 40). The Court, recognizing Lazar's *pro se* status, gave Lazar another opportunity to withdraw his filing and to refile his dismissal with prejudice to avoid paying any fees. (*Id.*) Lazar took no action. (*Id.*) On May 15, 2026, Wheels filed its petition for $39,827.50 in attorneys' fees. (Dkt. 42). Lazar filed a response challenging Wheels' petition for fees asking the Court to exclude approximately $22,000. (Dkt. 43). Wheels replied that it is entitled to the full amount of its fees. (Dkt. 45).

## LEGAL STANDARD

"'Rule 54(d) creates a presumption that the prevailing party will recover costs[.]'" *Nwoke v. Univ. of Chicago Med. Ctr.*, 2021 WL 3483434, at *2 (7th Cir. Aug. 9, 2021) (quoting *Crosby v. City of Chicago*, 949 F.3d 358, 363-64 (7th Cir. 2020)). "The purpose of awarding attorneys' fees on a voluntary dismissal without prejudice is to compensate the defendant for the unnecessary expense that the litigation has caused." *Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985). "Thus the fee award should reimburse the defendant for expenses incurred in preparing work product that will not be useful in subsequent litigation of the same claim." *Id.* The Court presumes that Wheels' attorneys' billing rate "is appropriate to use as the market rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011).

## ANALYSIS

The Court addresses each fee category Lazar challenges. (Dkt. 43). Lazar begins by challenging Wheels' attorneys' time spent on witness investigation and interview work—which he totals up to $4,180. (*Id.* at 2). Lazar claims that Wheels' attorneys' interviews of four of Wheels' employees are reusable because the facts of Lazar's hiring, employment, and termination will not change if he refiles in a different forum. (*Id.*) Lazar also asserts that the information gleaned from these interviews is "permanently" in Wheels' possession and will be "directly applicable in any subsequent proceeding" because Wheels need not reinterview these witnesses "from scratch." (*Id.*)

Lazar's position is overstated. To be sure, some aspects of the interviews may be reusable. If Lazar copied and pasted his complaint here and refiled it elsewhere, there may be enough overlap that Wheels need not interview these individuals again to respond to the complaint, assess the strength of its allegations, or garner evidence to prepare discovery. Lazar's position, however, rests on significant assumptions. It assumes that Lazar not only refiles his complaint but refiles it with the same claims based on the same facts in a forum where the information gathered is equally applicable. That is far from certain. (*See id.*); *see, e.g.*, *Vardon Golf Co. v. Karsten Mfg. Corp.*, 2003 WL 1720066, at *6 (N.D. Ill. Mar. 31, 2003) ("The Court will not reduce fees based on speculation."); *Bankston v. State of Illinois*, 1995 WL 609269, at *2 (N.D. Ill. Oct. 13, 1995) ("Nor will the court reduce attorneys' fees based on speculation."). In addition, Lazar's position treats all interviews the same. They are not. There are a panoply of reasons why an attorney may interview their client's employees—far from just being able to put together their answer to the complaint. For this reason, claiming that an interview to develop litigation strategy in one case is reusable in a different case because they are be related or have the same claims is not accurate. Once a case progresses, the nuances of discovery, intricacies of law, and peculiarities of the forum dictate how a party proceeds. These unpredictable variables require bespoke responses—mooting much if not all utility in prior interviews taken under different circumstances for different reasons at different times. For these reasons, the Court will not exclude interview or witness related fees Wheels' incurred after filing its Answer on August 4, 2025. (Dkt. 14). The Court will exclude fees from the following three time entries from Ms. Kopon: July 10, 2025 ($275), July 10, 2025 ($357.50), and July 29, 2025 (in part, $220)[1] for a total of $852.50. (Dkt. 42-1 at 6-7).

Lazar next asserts that Wheels' legal research is fully reusable and so the Court should exclude $2,915 from any award of fees. (Dkt. 43 at 2). This position is meritless. Law is ever evolving. If Lazar sued Wheels again in a different forum—even assuming within the Seventh Circuit—Wheels' attorneys have an ethical duty to ensure that their legal positions are accurate and based on current binding precedent. "No matter how experienced a lawyer is, he has to conduct (or have conducted for him) research to deal with changes in the law, to address new issues, and to refresh his recollection." *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). Blindly copying and pasting prior research over without verifying its accuracy would raise significant ethical issues. Indeed, "a lawyer who tries to respond to a motion or brief without conducting fresh research is courting sanctions or a malpractice suit." *Id.* Suppose too that Lazar

[1] The Court calculated this by taking the $880 billed entry and dividing it by the four "case file" items Ms. Kopon examined, of which, one was "interview notes." (Dkt. 42-1 at 7). Hence, $880 / 4 = $220. As Ms. Kopon also billed for drafting Wheels' Answer and affirmative defenses (which often take more time than the review itself), this is a conservative (and generous) estimate for Lazar. (*Id.*)

sued Wheels in Ohio, Wheels' research would be far less helpful or even irrelevant because Ohio is not in the Seventh Circuit (it is in the Sixth Circuit); and indeed, the Sixth Circuit may interpret Ohio law differently than the Seventh Circuit. This cuts further against Lazar if he were to sue in state court, as then Wheels' research on federal law may be irrelevant. The Court denies Lazar's position. (Dkt. 43 at 2).

Lazar next asserts that the $7,095 Wheels spent on document review, production, and privilege logs are fully reusable. (*Id.* at 3). Lazar claims that Wheels' attorneys need not re-review the documents they produced nor go back over their privilege logs if he filed a subsequent suit. (*Id.*) He further posits that this work is the "largest single category of reusable work," and so to force him "to pay for it would compensate Wheels twice for the same effort." (*Id.*)

Lazar's position misunderstands what attorneys do during discovery. From the moment a party serves a request for production, the receiving party must go through a series of expensive, time-consuming steps to comply with the Federal Rules of Civil Procedure. The attorneys must first analyze the requests, discuss them with their client, and ask their client to find the documents responsive to them—if Lazar were to change the scope of his requests or add new ones, then all of the work Wheels did here could be rendered worthless. Assuming the client finds or has such documents, they then send the documents to the attorneys either via email or a share link which then goes to the e-Discovery platform the client is paying for. That e-Discovery vendor then charges the party to process the documents to get them ready for attorney review. The attorneys then spend hours reviewing, tagging, and analyzing the documents—if the scope of Lazar's claims change, or if the venue in which he sued offers different defenses, all of this work and tagging could be rendered moot. No doubt attorneys can contract this work out to cheaper contract attorneys, but that is still not free.[2] After this, the attorneys must review the documentation for privilege and compliance with any protective order, the court's local rules, and the Federal Rules of Civil Procedure and then they must produce them in an orderly fashion with proper bates and confidentiality stamps. The process for responding to interrogatories is even more involved and time-consuming; and again, just one change in Lazar's claims, discovery requests, or the law binding the parties can alter all of this. The notion that Wheels can just "reuse" all the work done here if Lazar were to refile elsewhere is wrong.

That said, the universe of documents in this case appears relatively identifiable. It is hard to imagine that if Lazar were to refile—even if he were to add new claims and allegations—that the gathering of the documents relevant here would be completely irrelevant in a subsequent suit. Wheels undertook the process of identifying certain relevant documents for production; it need not go through that specific process again. For this reason, the Court excludes these three time entries from Ms. Kopon: November 11, 2025 ($192.50), November 11, 2025 ($797.50), and December 15, 2025 ($137.50) for a total of $1,127.50. (Dkt. 42-1 at 8-9). The Court excludes these four time entries from Mr. Kruger: November 5, 2025 ($330), November 6, 2025 ($440), November 21, 2025 ($577.50), and December 4, 2025 ($82.50) for a total of $1,430. (*Id.* at 13-14). The total excluded from this category is: $2,557.50.

---

[2] Even then, efforts like this to save money (say by having less expensive contract attorney conduct the initial review) can still increase costs as they require more quality control procedures and time spent correcting errors, mistakes, and the like.

Lazar's next argument is that the $5,937 Wheels spent on its own discovery responses and initial disclosures are fully reusable. (Dkt. 43 at 3). Lazar claims that Wheels' factual responses to his discovery requests will be "directly usable if this litigation resumes." (*Id.*) The "facts" of his employment, "the circumstances of his hiring and termination, and the identity of relevant witnesses and documents do not change," he claims. (*Id.*) This position fails for the reasons explained above. It again assumes that Lazar's next lawsuit will be identical in all aspects to his current one. It also assumes that Lazar in fact sues Wheels again. Neither may be true. The Court cannot accept such speculation. *Compare id. with Vardon*, 2003 WL 1720066, at *6 ("The Court will not reduce fees based on speculation."); *Bankston*, 1995 WL 609269, at *2; *compare also with Collins v. Swift Transportation Co.*, 2019 WL 10248703, at *1-3 (N.D. Ill. May 7, 2019) ("Plaintiff moved to . . . remand this case to the Circuit Court of Cook County. . . . Here, it is clear that Plaintiff intends to re-file this lawsuit in the Circuit Court of Cook County. Thus, Defendants' work product is not wasted and will be useful to the litigation once this case has been re-filed. Defendants' request for costs is therefore denied.").

Lazar raises a new standalone argument seeking to reduce the entirety of Wheels' fees by 15%. (Dkt. 43 at 3-4). He claims that Wheels' fees are "duplicative," "inflate[d]" and "redundant." (*Id.* at 3). He claims that the record is "replete with entries in which two attorneys bill for the same internal 'strategy' call or supervisory communication regarding routine tasks." (*Id.*)

Wheels staffed three attorneys from Littler Mendelson, P.C.: a shareholder, counsel, and associate. (Dkt. 42). Each of their rates were substantially reduced by 50% to 70% bringing their rates to $325 (shareholder) and $275 (counsel and associate). (*Id.*) That is eminently reasonable—market rates for associates at other firms charge well over $1,200. The staffing here is not excessive. (*Id.*) Wheels is not seeking fees for staff, extraneous tasks, or expensive dinners and gummy bears. Furthermore, firms rarely if ever only staff associates or counsel on cases—a partner/shareholder is required for oversight. The breakdown of work here is industry standard: the shareholder conducts oversight, strategy, and client-facing work; the associate and counsel handle the daily tasks. (*Id.*) Given the amount of time Wheels was forced to expend defending this case (*see Lazar v. Wheels*, Inc., 2026 WL 1194917, at *2 (N.D. Ill. May 1, 2026) (discussing the extensive work involved in defending against Lazar's complaint)), the fact that Wheels incurred (or is at least only seeking) $39,827.50 is remarkable. The Court additionally notes that Wheels is not seeking the fees it incurred in having its attorneys draft the petition for fees or their reply to Lazar's challenge. (*Compare* Dkt. 42-1 (no fee request after May 1, 2026) *with* (Dkts. 42, 45) (Wheels' petition for fees filed on May 15, 2026, and its reply to Lazar's challenge filed on June 12, 2026)). Both of these were fair game. *See Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980); *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988); *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988); *see also Holmstrom v. Metro. Life Ins., Co.*, 2011 WL 2149353, at *8 (N.D. Ill. May 31, 2011) ("attorney's fees incurred in litigating and establishing an attorney's entitlement to fees are generally compensable") (Dow, J.) (citing *Bond*, 630 F.2d at 1235).

Lazar's assertions that Wheels' attorneys' entries for strategizing and holding "strategy" meetings are duplicative again misunderstands the role of a litigator. (Dkt. 43 at 3-4). Litigators do not work in a vacuum. They communicate, strategize, and discuss the issues in their case with each other, going over legal strategies, work product, and case preparation. "The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through

a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008). It is not uncommon for an entire litigation team to intensively review, edit, and debate a single email—because sometimes in litigation, one wrong word can have crippling consequences. At any rate, accepting Lazar's position as true reveals its absurdity. How could a team of attorneys defend a client without discussing the case with one another? If the junior associates were just siloed off working with no oversight from the shareholder, that would raise ethical issues.

At last, Lazar raises a series of "mitigating factors" favoring reduction or "reconsideration of the Court's May 1, 2026 Order." (Dkt. 43 at 4) (capitalization removed). Lazar claims he "is being punished for the failures of his prior counsel." (*Id.*) He claims his prior counsel "failed to adequately prosecute this matter or communicate properly" with Lazar. (*Id.*) This is not relevant. Even if it were, Lazar is bound by his counsel's decisions and mistakes. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) ("we have held that clients must be held accountable for the acts and omissions of their attorneys"). "The rule is that *all* of the attorney's misconduct (except in the cases where the act is outside the scope of employment or in cases of excusable neglect) becomes the problem of the client." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). "'Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either.'" *United States v. 7108 W. Grand Ave., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994) (quoting *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986)); *Jones v. Indiana Harbor Belt R. Co.*, 127 F. App'x 221, 222 (7th Cir. 2005). Further, even accepting Lazar's positions as true, his recourse would not be against Wheels but against his prior counsel. *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003) ("If a party's lawyer is guilty of professional malpractice . . . the party has a remedy against him, but it should not be permitted to shift the burden of its agent's neglect to the district court and the defendants."); *Topi v. Mukasey*, 264 F. App'x 504, 507 (7th Cir. 2008).

Lazar next notes that the "Court expressly recognized that [Lazar's] Complaint was not 'facially frivolous' and that [Lazar] 'may have a viable claim if he were to keep counsel retained." (Dkt. 43 at 4) (quoting Dkt. 40 at 3). Lazar misstates the purpose of those words by ignoring that immediately after the Court wrote them it explicitly stated that it "is not construing nor ruling on the validity of any of Lazar's claims. The Court's review is strictly limited to Rule 41(a)(1) and the *Pace* factors." (Dkt. 40 at n.1). From this faulty premise, Lazar extrapolates that "this finding is significant because the dismissal did not result from knowingly meritless claims or intentional bad-faith conduct, but instead from the collapse of the attorney-client relationship[.]" (Dkt. 43 at 4). Lazar again misunderstands the import of the Court's prior order and the analysis Rule 41 requires. The merits of Lazar's case are not at issue. (*See* Dkt. 40 at n.1). Nor is this an issue of bad-faith conduct. The language Lazar latches onto was purely in relation to the fact that Lazar is not an attorney and was proceeding *pro se*, which means the Court must undertake a liberal view of his filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

What is at issue and central to the Court's analysis right now, however, is Lazar's decision to proceed with his voluntary dismissal. The Court warned Lazar during the April 21, 2026, status hearing that if he chose to voluntarily dismiss without prejudice, he would be required to pay Wheels' fees. (Dkt. 37). Indeed, even during the status hearing, Wheels' attorney noted that he had expended upwards of $30,000 on the case alone. (*Id.*) That should have been Lazar's wake-up call that if he continues down this road, he will end up paying tens of thousands of dollars. Given this situation and Lazar's *pro se* status, the Court expressly gave him a second chance and a way out of paying these fees. (Dkt. 40 at 3). The Court stated that because "Lazar is proceeding *pro se*, he may not know that his motion may subject him to a five figure bill (or worse)," because of this, the Court *sua sponte* granted "Lazar leave to withdraw his motion solely for the purpose to refile it with prejudice" and it ruled that "[s]hould Lazar proceed with this route, the Court will not order Lazar to pay Wheels' fees." (*Id.*) The Court gave Lazar two weeks to take this offer. (*Id.*) Lazar chose to not accept. He instead waited nearly a month before filing an untimely, unsubstantiated challenge to Wheels' fees. (Dkt. 43). Because Lazar chose to make those decisions with full knowledge of the consequences, he must now live with their ramifications.

The Court therefore orders Lazar to pay Wheels $36,417.50. The Court warns Lazar that if he files any additional papers on the Court's docket requiring a substantive response from Wheels, he may be required to pay even more of Wheels' attorneys' fees.

**CONCLUSION**

For all these reasons, the Court grants Wheels' Petition for Attorneys' Fees in part. (Dkt. 42). Lazar is ordered to pay Wheels' $36,417.50 two weeks from the date of this order.

Virginia M. Kendall
United States District Judge

Date: August 26, 2026